# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0625 | **DATE** | 12/16/2002 |
| **CASE TITLE** | | Taylor vs. Briley | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petition for Writ of Habeas Corpus

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Petitioner's petition for writ of habeas corpus brought pursuant to 28 U.S.C. 2254. Petitioner's petition is denied. It is so ordered.

/s/ Charles R. Norgle

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 18 2002 date docketed | |
| ✔ | Docketing to mail notices. | | | 24 |
| ✔ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 DEC 17 PM 1:58 | DEC 18 2002 date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel. ) <br> DANIEL TAYLOR, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> KENNETH BRILEY, Warden ) <br> Stateville Correctional Center, ) <br> ) <br> Respondent. ) | No. 00 C 0625 <br><br> HONORABLE CHARLES R. NORGLE <br><br> DOCKETED <br> DEC 18 2002 |

## OPINION AND ORDER

**Charles R. Norgle Sr., District Judge**

Before the court is Petitioner's, Daniel Taylor ("Taylor"), petition for writ of habeas corpus, brought pursuant to 28 U.S.C. 2254. For the following reasons Taylor's petition is denied

## I. BACKGROUND

Taylor was tried by a jury and found guilty of two counts of first degree murder, two counts of home invasion and armed robbery. Taylor was sentenced to a term of natural life without parole for the two murders and 30 years for two counts of home invasion and armed robbery to run concurrent. Taylor asserts that he should be granted habeas corpus relief because the prosecution did not prove his guilt beyond a reasonable doubt.

Taylor's conviction stems from an incident that occurred on November 16, 1992, at approximately 8:45 p.m., when Jeffrey Lassiter and Sharon Haugabook, were fatally shot in Lassiter's second floor apartment at 910 West Agatite Chicago. The victims were each shot twice in the head.

The manager of the apartment complex at 910 West Agatite, who lives directly above Lassiter, heard the shots and came downstairs to investigate. The manager discovered the two victims and called the police immediately. The police arrived at approximately 9:10 p.m. Lassiter was pronounced dead at the scene. Haugabook was transported to a local hospital where she later succumbed to her injuries.

On December 3, 1992, Taylor, along with seven other individuals, was arrested for the murders of Lassiter and Haugabook. Initially Taylor stated that he had no knowledge of the incident, but he later stated that he knew of the crime and confessed. Taylor provided detailed information about the shootings and the events leading up to and after the incident in a court reported statement.

Taylor stated that on November 16, 1992 at approximately 7:00 p.m. he and seven other members of the gang called the Vice Lords met at Clarendon Park to discuss drug money that Lassiter owed them. Timothy "Rock" Cobb, a member of the Vice Lords, told the group that they were going to go over to Lassiter's apartment to collect the money and if Lassiter did not have the money that they would have to "take care of business." Taylor took Rock's "take care of business" statement to mean that they would kill Lassiter if he did not come up with the money.

Upon arrival at the apartment complex at 910 West Agatite, four of the gang members were positioned outside as look outs while Taylor and three others entered the building. They knocked on Lassiter's door. When Lassiter refused to let Taylor and the others into his apartment they broke down the door. Once inside the apartment two individuals approached Lassiter and demanded the money that he owed. Taylor and another gang member grabbed Haugabook as she attempted to hide in the bathroom. When Lassiter said that he did not have the money "C Deon," one of the gang members, shot Lassiter twice in the head. Rock then turned to Haugabook and said, "We got to kill

2

you because you know who did it." C Deon then proceeded to shoot Haugabook twice in the head. Taylor and another gang member picked Haugabook up and placed her on the sofa. They then proceeded to search the victims, taking approximately $150 off of Lassiter.

As they left the apartment building, Taylor was handed the pistol and told to hide it. Taylor stated that he hid the weapon in an alley. Taylor later took the police to the alley in an attempt to find the weapon but they could not.

Taylor was also shown a map of the area. Taylor indicated where all of the look-outs were positioned, he placed a mark on the door that they used to enter Lassiter's apartment, and he identified five of the other perpetrators in a photograph array. All of Taylor's statements corroborated the eyewitness testimony heard at trial and the evidence at the crime scene.

After Taylor gave his statement he was placed in a line-up and identified. Once the line-up was concluded Taylor was placed in lockup. After being placed in lockup Taylor for the first time stated that he remembered the night of the murders because he was arrested for battery that day. At no time prior to this had Taylor ever mentioned being arrested on the 16th. Taylor was now attempting to assert that he did not participate in the murders because he was in jail. Taylor could not provide any evidence that he was in fact in custody at the time of the incident.

The police followed up on Taylor's remarks about being in custody and did in fact find an arrest report with the name "Daniel Taylor" and a copy of a corresponding bond slip for November 16, 2002. The bond slip showed that "Daniel Taylor" was arrested on November 16, 2002 at 6:45 p.m. and released on bond at 10:00 p.m.

Despite Taylor's assertions that he was in jail at the time of the killings, several witnesses testified to the contrary at trial. Adrian Grimes testified that he saw Taylor at the Claredon Gardens

at 8:10 when he went to go play basketball. Chicago police officer Glinski testified that he saw Taylor at approximately 9:30, and that after having a brief conversation with Taylor took him back to the Maryville center at 810 Montrose. Both of these testimonies went against Taylor's contention that he was in jail at the time of the murders.

All of the evidence was presented to a jury, both Taylor's statements and his contention that he was in jail at the time of the murders on the 16th. The jury reviewed all of the evidence and found Taylor guilty of all the crimes charged.

Taylor appealed his conviction to the Illinois Appellate Court raising two issues: 1) that the State failed to prove his guilt beyond a reasonable doubt, and 2) that he was denied his right to due process of law when the trial court coerced a guilty verdict by informing the jury that they would be sequestered for the night if they did not reach a verdict by 9:00 p.m. The Illinois Appellate Court denied Taylor's appeal, finding that a "rational trier of fact could have found defendant guilty beyond a reasonable doubt," See Resp't Answer Ex. C pg. 17, and that there was no evidence of any coercive actions by the court which interfered with the jury's deliberations. See Resp't Answer Ex. C pg. 18.

Following the denial of Taylor's appeal, Taylor filed a petition for leave to appeal to the Illinois Supreme Court, in which he only raised the issue of whether he was proven beyond guilty beyond a reasonable doubt. The Illinois Supreme Court denied Taylor's petition for leave to appeal from direct appeal.

Taylor's petition for writ of habeas corpus rests on insufficient evidence to convict him beyond a reasonable doubt.

## II. DISCUSSION

The court first discusses the general rules of federal habeas review and then discusses Taylor's claim.

### A. Standard of Review

Taylor's case is governed by 28 U.S.C. § 2254(d), as amended by AEDPA. Section 2254 sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams). The "unreasonable application" clause of §2254(d)(1) governs alleged

5

errors in the state court application of Supreme Court precedent to the facts of the case. See Boss, 263 F.3d at 739; see also Williams, 120 S. Ct. at 1520-21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). While federal courts have an independent duty to say what the law is, Williams, 120 S. Ct. at 1522, an erroneous application of the law by a state court will not be grounds for relief unless the application was also unreasonable. See id.; Boss, 263 F.3d at 739. Whether the state court's decision was reasonable is an objective question that does not necessarily turn on the correctness of the state court's decision. See Williams, 120 S.Ct. at 1521-22 (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 120 S. Ct. at 1520-22; Washington v. Smith, 219 F.3d 620, 628 & n.5 (7th Cir. 2000).

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir. 1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct.") The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "When a petitioner in a habeas action challenges the sufficiency of the evidence, [the court's] task is to determine whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Barger v. Indiana, 991 F.2d 394, 397 (7th Cir.

1993) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). A court will "overturn a jury's verdict only if 'the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" United States v. Jackson, 300 F.3d 740, 747 (7th Cir. 2002) (quoting United States v. Moore, 764 F.2d 476, 478 (7th Cir. 1985)).

**B. Taylor's Claim**

Taylor's only claim for the writ is that there was not sufficient evidence to convict him beyond a reasonable doubt. Taylor asserts that because he was able to produce a bond slip showing that "Daniel Taylor" was arrested on November 16, 1992 at 6:30 p.m. and not released until 10:00 p.m. that he could not have participated in the murders. The jury was provided with this information at trial, they were also provided with two eyewitnesses placing Taylor in proximity to where the murders took place and at times when he was allegedly in jail. The jury was also provided with all of Taylor's statements implicating himself and others. Taylor confessed to the crimes and provided great detail as to the events leading up to, during, and after the murders of Lassiter and Haugabook. The factual findings made by the state court are presumed correct, Rodriguez, 63 F.3d at 554, it is Taylor's burden to rebut that presumption. 28 U.S.C. 2254(e)(1). Taylor has only reiterated the evidence presented at trial in his petition. The trial court record is replete with evidence from which the jury could find guilt beyond a reasonable doubt and therefore the court will not overturn the jury's verdict.

Furthermore, the Illinois Appellate Court was presented with the same argument on direct appeal. The Illinois Appellate Court stated:

> "Viewing all the evidence in the light most favorable to the prosecution, we cannot say that no rational trier of fact could have found defendant guilty beyond a reasonable doubt." See People v. Batchelor, 171 Ill. 2d 367, 376-78, 665 N.E.2d at 777, 780-81 (1996); Collins, 106 Ill. 2d at 261, 478 N.E.2d at 277; 720 ILCS 5/9-

7

1(a)(1) (West 1996); 720 ILCS 5/12-11(a)(1) (West 1996); 720 ILCS 5/18-2(a) (West 1996).

See Resp't Answer Ex. C pg 17.

The Illinois Appellate Court's decision was not contrary to, or an unreasonable application of Federal Law as established by the Supreme Court of the United States. The Illinois Appellate Court followed Supreme Court law when it made its findings. The Illinois Appellate Court gave the same amount of deference to the jury's findings of fact as this court is proscribed to give by the Supreme Court. See Wright v. West, 505 U.S. 277 (1992); see also Jackson v. Virginia, 443 U.S. 307 (1978). When viewing the facts of this case in the light most favorable to the prosecution the court, just as the Illinois Appellate Court, cannot say that no rational trier of fact could have found Taylor guilty beyond a reasonable doubt. Taylor's petition is therefore denied on its merits.

### III. CONCLUSION

For the forgoing reasons Petitioner's petition for writ of habeas corpus, brought pursuant to 28 U.S.C. 2254 is denied.

IT IS SO ORDERED.

ENTER:

*/s/ Charles R. Norgle/*

CHARLES RONALD NORGLE SR., District Court Judge

DATED: 12-16-02